# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DANIEL SARAMA,

        Plaintiff,

v.                                Case No. 3:19-cv-1116-TJC-JRK

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION,

        Defendant.

_____

# O R D E R

## I.   Status

This cause is before the Court on Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 17; "Motion"), filed April 24, 2020, that contains a number of attachments that are discussed in detail below. Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 18; "Response") was filed May 15, 2020. Attached to the Response is a Declaration of Angela D. Hertel[1] (Doc. No. 18-1; "Hertel Decl.") and a Form 95 Claim for Damage, Injury, or Death that Plaintiff filed with Defendant on April 17, 2019 (Doc. No. 18-2). Plaintiff replied on May 29, 2020. See Plaintiff's Reply to Defendant's

_____

[1]    Ms. Hertel is the Acting Unit Chief of the Freedom of Information/Privacy Act Unit ("FOIA Unit") of the United States Department of Justice ("DOJ"), DEA, located at DEA's Headquarters in Arlington, VA. Hertel Decl. ¶ 1.

Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 19; "Reply"). Oral argument was held telephonically on January 28, 2021. See Minute Entry (Doc. No. 25); Transcript of Oral Argument (Doc. No. 30; "Tr."), filed January 6, 2023.[2] Thereafter, in accordance with the Court's instructions during argument, see Tr. at 18-19, 28, Plaintiff filed a Notice of Filing Affidavit of Stephanie N. Cobb (Doc. No. 26) on January 29, 2021, to which Ms. Cobb's affidavit is attached (Doc. No. 26-1; "Cobb Aff."). Plaintiff seeks an award of his attorneys' fees and costs for his efforts to obtain documents from the United States Drug Enforcement Administration ("Defendant") under the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"). Motion at 1-2.[3]

As background, Plaintiff alleges he was badly injured on May 22, 2017 when an individual who was being surveilled by law enforcement officers, Marion Walker, fled the officers, lost control of his vehicle, and struck Plaintiff as Plaintiff was walking on a sidewalk. Motion at 2. Plaintiff contends that the various law enforcement agencies believed to be involved that day all denied involvement, which forced him to hire a lawyer to investigate the circumstances of the accident. Id. The relevant findings of fact follow.

---

[2]     Oral argument was held before the Honorable Timothy J. Corrigan, Chief United States District Judge. The undersigned has since been designated to handle the instant Motion. The undersigned has reviewed the entirety of the file, including the transcript of the hearing before Judge Corrigan.

[3]     Because of ongoing related proceedings, this case was stayed on March 11, 2021 pending the outcome of those proceedings. Order (Doc. No. 27), entered March 11, 2021. The parties have since advised that the related proceedings have been resolved and that the instant Motion is ripe for consideration. Status Report (Doc. No. 29), filed June 22, 2021.

## II.   Findings of Fact

Plaintiff's law firm sent a formal FOIA request to Defendant on June 27, 2018. Motion at Ex. 2 (Doc. No. 17-2; "FOIA request"). The FOIA request stated:

> This firm is investigating the potential claim of our client, Daniel Sarama, who sustained injuries related to a car accident that occurred on May 22, 2017 near SR-134 and I-295.
>
> Pursuant to [FOIA], 5 U.S.C. § 552, we request a legible/readable copy of the following information:
>
> 1. Pursuit policies in effect during May 2017
>
> 2. Pursuit reports relative to the accident referenced above
>
> 3. Dash cam video footage of all vehicle units at the scene of the accident on 5/22/17, for a time period of 10 minutes before and 10 minutes after the time of the accident, which occurred at 2:02 p.m.
>
> 4. Body cam footage of all officers at the scene of the accident on 5/22/17, for a time period of 10 minutes before and 10 minutes after the time of the accident, which occurred at 2:02 p.m.
>
> 5. Audio recording of communication of any DEA agents involved in any pursuit, following or surveillance of Marion Walker relative to the accident referenced above.

FOIA request at 1.

The FOIA request was acknowledged by Defendant through a letter dated July 16, 2018. Motion at Ex. 3 (Doc. No. 17-3). The letter assigned a case number and advised that "[t]he records [sought] require searches in another office or

offices, and so [the] request falls within 'unusual circumstances.'" <u>Id.</u> at 1 (citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii)).

Typically, the FOIA allows an agency twenty (20) days to respond to a FOIA request. 5 U.S.C. § 552(a)(6)(A). If, like here, a matter is deemed to arise from "unusual circumstances," the FOIA allows for an extension of time and states that an agency shall provide "written notice to the person making such request setting forth the unusual circumstances . . . and the date on which a determination is expected to be dispatched." <u>Id.</u> § 552(a)(6)(B)(i). "[T]he need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request" is a recognized unusual circumstance. <u>Id.</u> § 552(a)(6)(B)(iii)(I). The FOIA further provides that "[n]o such notice shall specify a date that would result in an extension for more than ten working days," except that if the agency cannot process the matter within the specified time limit, it "shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." <u>Id.</u> § 552(a)(6)(B)(i)-(ii).

The July 16, 2018 letter, in an apparent attempt to comply with these FOIA provisions, went on to state that "[b]ecause of these unusual circumstances, [Defendant is] extending the time limit to respond to [the FOIA

request] beyond the ten additional days provided by the statute." Motion at Ex. 3 p.1.

As to the expected timeframe for compliance, the letter stated:

> The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the complex track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

Id. (emphasis added).

Behind the scenes, the FOIA unit searched its Investigative Reporting and Filing System by querying the DEA Narcotics and Dangerous Drugs Information System with Mr. Walker's name. Hertel Decl. ¶ 12. As a result of the search, "DEA identified the case file responsive to Plaintiff's request" and "[b]y memorandum dated July 18, 2018, the FOIA Unit tasked DEA's Miami Division, the office that was identified as having the case file, with retrieving the responsive records and sending a copy to the FOIA Unit." Id. ¶ 16.

Just three days after the FOIA request had been made by Plaintiff and one day after the Miami Division was asked by the FOIA Unit to retrieve responsive records, on July 19, 2018, "the FOIA Unit received a response from the Miami Division." Id. ¶ 17. "The response included a copy of a DEA Form 6 (Report of Investigation)." Id. This form "detailed the surveillance and traffic stop of Mr. Walker on May 22, 2017, including the vehicle accident that resulted in injury to [] Plaintiff." Id.

The same day that the FOIA Unit received the response from the Miami Division, July 19, 2018, Defendant sent another letter to Plaintiff simply acknowledging receipt of the FOIA request (again), advising that the "request ha[d] been assigned," was "being handled as expeditiously as possible," and any questions should be directed to "Government Information Specialist Ms. Lonon." Motion at Ex. 4 (Doc. No. 17-4).

Months passed. On October 5, 2018, Ms. Cobb, a legal assistant with Plaintiff's counsel's office, called Ms. Lonon "to inquire about the status of [the FOIA] request." Cobb Aff. ¶ 7. Ms. Lonon "informed [her] that there were two cases ahead of [Plaintiff's FOIA] request, that no response time could be provided, and that [the] request would be processed when they got to it." Id.

Behind the scenes, through "correspondence dated October 23, 2018, the FOIA Unit sought confirmation that the Miami Field Division did not [have] any recordings of Mr. Walker dated May 22, 2017, or any recordings

surrounding the events of the accident involving Mr. Walker and Plaintiff that occurred on May 22, 2017." Hertel Decl. ¶ 18. On an unknown date presumed to be close in time to the October 23, 2018 request for confirmation, "[t]he Miami Field Division confirmed that there were no recordings." Id.; see Tr. at 13 (Defendant's counsel confirming that confirmation of no recordings came "either the same day or the next day" after the Miami Field Division was asked).

Having heard nothing in months, on March 5, 2019, Ms. Cobb from Plaintiff's counsel's office again called Ms. Lonon to inquire about the status of the request. Cobb Aff. ¶ 8. She was again "informed they could not give an estimated time of a response, that the request was being reviewed, and that it would be sent back to the FOIA department to be sent to [Plaintiff's counsel] once it [was] cleared." Id.

Again having heard nothing, Ms. Cobb called Ms. Lonon on August 14, 2019. Id. ¶ 9. At that time, Ms. Cobb was told that the matter "was in between the Chief Counsel and the Top Line Supervisor" and that someone would "call the following day regarding some items that were requested such as the audio, dash and body cam videos." Id. Ms. Cobb received a call the same day "and was told that the documents would be sent out the following week." Id.

Then, the FOIA Unit evidently began work on the first item in Plaintiff's FOIA request (pursuit policies in effect during May 2017). See Hertel Decl. ¶ 19. "[T]he FOIA Unit identified the DEA Agents Manual as containing a

provision on 'emergency driving' that was responsive to Plaintiff's request," but because the manual has sensitive law enforcement information, "the responsive section of the manual was sent to DEA's Operations Division" on August 19, 2019 "for review of whether any portion of the section could be released." Id.

Four days later, August 23, 2019, the Operations Division responded "indicat[ing] that the entire section could be disclosed with the exception of one sentence." Id. ¶ 20. The sentence was redacted. Id.

On August 26, 2019, Ms. Lonon called Ms. Cobb to tell her that when the representation had been made earlier about the documents being sent out the following week, "she was anticipating that everything would have been approved by then" but it was not. Cobb Aff. ¶ 10. Ms. Lonon indicated the executive officer still needed some questions answered and once they were answered satisfactorily, the file would be sent out. Id. She estimated "hopefully" it would be sent sometime that week. Id.

Ms. Lonon called Ms. Cobb again on September 5, 2019. Id. ¶ 11. This time, she indicated "that the file was returned to her supervisor and was waiting for review and signature." Id.; see also Hertel Decl. ¶ 21. Ms. Cobb requested an estimated response date and was advised one could not be provided. Cobb Aff. ¶ 11.

Internally, the supervisor reviewed the case file and forwarded it to the Acting Chief of the FOIA Unit on September 10, 2019 for final closure approval. Hertel Decl. ¶ 22.

Having heard nothing since September 5, 2019, Plaintiff's counsel drafted the Complaint initiating the instant case and instructed Ms. Cobb to file it. Cobb Aff. ¶ 12. Ms. Cobb filed the Complaint on September 30, 2019. Id.; see also Compl. (Doc. No. 1). At the time of the filing of the Complaint, the FOIA case file was awaiting approval by the Acting Chief of the FOIA Unit. Hertel Decl. ¶ 22.

Ms. Hertel explained in the Hertel Declaration that when Plaintiff made the FOIA request, "DEA had a significant backlog in FOIA requests," having "between 18 and 24 full-time FOIA employees from 2018-2019," and being "understaffed to meet the demands of timely processing incoming FOIA requests." Hertel Decl. ¶ 8. She went on to state that the "backlog of FOIA requests continued throughout the pendency of this request," explaining that "[a]t the end of 2019, DEA had 610 pending requests and 462 backlogged requests." Id. ¶ 9. Ms. Hertel also stated that the federal government was shut down for thirty-five (35) days, from December 22, 2018 through January 25, 2019, and that the shutdown "further exacerbated the backlog of FOIA requests." Id. ¶ 10.

After the Complaint in this matter was filed, Defendant moved, unopposed, to extend the deadline to respond to the Complaint and all other deadlines for forty-five (45) days because it needed "additional time to complete its review and produce documents." Defendant's Consent Motion to Extend Time to File Response to Complaint (Doc. No. 6), filed November 5, 2019, at 1. Defendant indicated it was "possible and even likely that the parties [would] be able to resolve these matters without the need to engage in litigation or involve the Court." Id. at 1-2. The Court granted Defendant's motion by Endorsed Order entered November 6, 2019 and stayed all deadlines until further order, directing the parties to file a status report no later than December 20, 2019. Endorsed Order (Doc. No. 7).

By letter dated December 4, 2019, Defendant formally responded to Plaintiff's FOIA request. Motion at Ex. 5 (Doc. No. 17-5); see also Cobb Aff. ¶ 13. In response, Defendant provided the pursuit policies (with redactions) in accordance with the request made in item number one. Motion at Ex. 5. As to items three through five (seeking dash cam footage, body cam footage, and audio recordings), Plaintiff was advised that Defendant had no responsive documents or records. Id. As to item two (seeking the specific pursuit report relative to the May 22, 2017 accident), Defendant made the determination to deny the request. Id.

The parties then engaged in negotiation and discussion—both sides involving counsel—about the FOIA request and Defendant's response. <u>See</u> Cobb Aff. ¶ 14, Ex. B. On December 17, 2019, Defendant sent Plaintiff another formal response to the FOIA request in which it was represented that "[u]pon further review, [the FOIA Unit had] decided to release a portion of one page of DEA's report to [Plaintiff]," and enclosed the relevant portion of the report. Cobb Aff. at Ex. A pp. 15-16; <u>see also</u> <u>id.</u> ¶ 15; Hertel Decl. ¶ 24.

On December 19, 2019, the parties filed a Status Report (Doc. No. 8) requesting more time to confer on the FOIA issue. The Court granted the request and ordered a further status report to be filed by January 21, 2020. Endorsed Order (Doc. No. 9). On January 21, 2020, another Joint Status Report (Doc. No. 10) was filed. This time, the parties advised that Plaintiff was "not satisfied with [Defendant's] response to the FOIA request and wishe[d] to continue with litigation." <u>Id.</u> at 1. On January 22, 2020, the Court entered an Endorsed Order (Doc. No. 11) directing Defendant to respond to the Complaint by February 14, 2020 and the parties to file a joint notice by February 21, 2020.

Defendant responded to the Complaint on February 14, 2020. <u>See</u> Defendant's Answer and Affirmative Defenses (Doc. No. 12; "Answer"). Through the Answer, Defendant admitted it did not produce documents in response to Plaintiff's FOIA request until December 4, 2019 and then produced a supplemental response on December 19, 2019. <u>Id.</u> ¶ 9. Defendant also admitted

that when the Complaint was filed, it "had not provided a basis for withholding the requested information." Id. ¶ 11.

On February 20, 2020, the parties filed a Joint Notice (Doc. No. 13) in which they represented that "Plaintiff is not seeking any further [FOIA] productions," and indicated the only issues remaining had to do with which party should be considered "prevailing" and whether Plaintiff is eligible for or entitled to attorney's fees and costs. Id. at 1.

Thereafter, the instant Motion and related papers were filed and argument held.

## III.   Discussion

The FOIA provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case [under the FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A two-step process is involved in deciding a fees and costs motion brought under this Section: first, eligibility; second, entitlement.

### A. Eligibility

A complainant is eligible for an award of fees and costs if the complainant has "substantially prevailed" by obtaining relief through either "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II). Since there has not been a

judicial order or enforceable written agreement or consent decree in this matter, the eligibility inquiry comes down to whether there was a voluntary or unilateral change in Defendant's position. See id.

To substantially prevail, a plaintiff must establish that the lawsuit "could reasonably be regarded as necessary to obtain the information and that the action had a substantial causative effect on the delivery of the information." Lovell v. Alderete, 630 F.2d 428, 432 (5th Cir. 1980) (citation omitted); see also Chilivis v. S.E.C., 673 F.2d 1205, 1212 (11th Cir. 1982) (quotation omitted); Friends of Etna Turpentine Camp v. U.S. Fish & Wildlife Serv., No. 3:17-cv-1409-MMH-PDB, 2019 WL 5110654, at *12 (M.D. Fla. July 9, 2019) (unpublished report and recommendation), adopted as modified, 2019 WL 3852732 (M.D. Fla. Aug. 16, 2019) (unpublished order). In other words, the lawsuit must provide "the necessary impetus for disclosure." Chilivis, 673 F.2d at 1212.

"This inquiry is necessarily fact-specific." Conservation Force v. Jewell, 160 F. Supp. 3d 194, 205 (D.D.C. 2016). Some non-exhaustive factors to consider are "whether the agency made a good-faith effort to search out material and pass on whether it should be disclosed, whether the scope of [the] request caused delay in disclosure, and whether the agency was burdened by other duties that delayed its response." Id. (internal alterations, quotation, and citation omitted). "At bottom . . .the question is whether hard evidence—beyond

temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." Id.; see also Weisberg v. U.S. D.O.J., 745 F.2d 1476, 1496 (D.C. Cir. 1984) (citation omitted) (noting "the mere filing of the complaint and subsequent release of the documents is insufficient to establish causation").

On the issue of whether Plaintiff substantially prevailed, Plaintiff argues he has because the FOIA request had been pending for fifteen months when suit was filed, because the FOIA request "sought only five very specific items," and because Defendant "offered no explanation to justify its failure to respond over more than [fifteen] months until [Plaintiff] filed suit." Motion at 5-6. Plaintiff points out that when Defendant finally complied with the request, it "produced a total of [five] pages of substantive response, consisting of one vehicular pursuit policy and one page of an incident report." Id. at 6. Plaintiff posits that if fifteen months for that sort of production is reasonable, "it is hard to imagine any circumstance in which an agency could be held to have unreasonably delayed." Id. Plaintiff concludes, "[b]y filing suit here, [he] forced [Defendant] to answer to this Court," and "into a position of having either to respond at long last to his simple FOIA request, or to justify to this Court its failure to respond." Id. at 8.

Defendant on this issue argues that "the lawsuit was not the impetus for the release" of the FOIA documents. Response at 6. Defendant contends that

the internal actions in the months leading to the filing of the Complaint show that this case "was not the 'catalyst' or 'impetus' for the processing of Plaintiff's request." Id. Defendant also asserts that the backlog of FOIA requests and the government shut down during the months prior to the suit being filed justify the late response, and Defendant points out that the fee-shifting provision of FOIA was not enacted to punish agencies for slowness. Id. at 7 (citation omitted).[4]

Upon review of the parties' arguments and the unique circumstances of this case, the Court finds Plaintiff has substantially prevailed in this matter and as such, he is eligible for an award of fees and costs. The Court is aware that the release of documents after a suit is filed cannot in and of itself show that the lawsuit was the impetus for disclosure. But here, especially considering the non-exhaustive factors set forth in Jewell, there is evidence beyond temporal proximity supporting the inference that this case indeed was the impetus for disclosure. See Jewell, 160 F. Supp. 3d at 205.

First, it does appear Defendant made an effort to search for material responsive to request numbers two through five. However, Defendant did not pass on whether the responsive information should be disclosed for the fifteen

---

[4]     Alternatively, Defendant discusses the circumstances surrounding its decision to withhold and then ultimately produce the DEA Form 6 and argues the ultimate production of part of the DEA Form 6 does not meet the meet the eligibility standard. Response at 7-8. The Court need not reach this particular issue; the Court's analysis of the entitlement issue does not require parsing the two different productions.

months prior to the filing of the lawsuit, even in light of having all of the information needed to do so at least a full year prior to the suit being filed. <u>See id.</u> The FOIA Unit had in its possession <u>within three days of the FOIA request</u> the DEA 6 report responsive to request number two. The FOIA Unit had confirmation that there were no recordings or footage responsive to request numbers three through five on an unknown date, but in context, it appears this confirmation occurred close in time to October 2018. Combined with Defendant's representation in the Response that "dashboard cameras and body worn cameras are not tools DEA possesses or uses in the field," Response at 3, these requests (numbers two through five) were not difficult to respond to.[5] Instead of responding to these, however, Defendant continued to delay.

This left one small piece of the puzzle: the relevant pursuit policy set forth in the manual (responsive to request number one). There is an unexplained gap of any substantive work on the matter for about ten months—from October 2018 through August 2019—in Ms. Hertel's Declaration, except for the short timeframe in which the Government was shut down (December 22, 2018 through January 25, 2019). Ms. Hertel does not explain what, if anything, was being done during the large gap of time, but for unknown reasons, the FOIA

---

[5]     Government counsel herself conceded during oral argument, albeit while discussing a different point, that "[t]here was never any dispute about any exceptions that were being applied, which is different from a lot of FOIA cases." Tr. at 8. The implication here is that the level of difficulty was not high.

Unit did not ask the DEA Operations Division until August 2019 to review the relevant section of the manual that is responsive to request number one. This, despite Plaintiff's counsel's office calling on March 5, 2019 and August 14, 2019 asking for status updates.[6]

When the FOIA Unit got around to seeking review of the relevant section, it took the Operations Division just four days to respond saying it could be disclosed with redactions. Yet, even with multiple follow up inquiries by Plaintiff's counsel's office, nothing was disclosed. Even after an assurance that the FOIA request would be responded to, it was not. For all of the foregoing reasons, the first non-exhaustive factor weighs in favor of Plaintiff and against Defendant because there was no real effort made to attempt disclosure prior to suit being filed.

The second factor, the scope of the request, weighs strongly in favor of Plaintiff. The Court views this FOIA request as very narrow in scope. That view is reinforced by the short amount of time it took for the FOIA Unit to receive responses from the Miami Division and the Operations Division (just days) when they were actually sought. It is further reinforced by the production that finally occurred: five pages of materials.

---

[6]     Defendant's counsel represented at the hearing that during this time, it "would have been the - - I believe the Operations Division, which was determining whether any portion of the DEA agent's manual could be released in response to request part one." Tr. at 14. This representation is not set forth in the Hertel Declaration and is vague and unspecific in terms of identifying actual work being done on the matter.

The third factor, whether the agency was burdened by other duties that delayed its response, is at best neutral here. The Court accepts and understands that the FOIA Unit experienced a significant FOIA backlog during the timeframe at issue, and that the Government was shut down for a relatively short part of it. The Court finds, however, that Defendant's unilateral election to label this very simple request as "complex" sent it through a longer bureaucratic process that was unnecessary and unwarranted. [7] Indeed, Defendant's own initial responsive letter indicates that a simple request "usually receive[s] a response in approximately one month." Moreover, at oral argument, counsel represented that because the matter was designated as "complex, . . . it was going to be handled on a first-in/first out basis relative to other complex requests." Tr. at 11. Had the FOIA Unit identified the relevant pursuit policy and sought confirmation on that matter in a more timely manner, the self-imposed one month responsive timeframe for simple requests would have been easily attainable.

The Court recognizes that Defendant appears to have been in the final stages of approving the response to the FOIA request when this suit was filed. But, the Court is unwilling to speculate how long the final approval would have

---

[7]     Defendant has not explained to the Court how it makes such simple/complex determinations, other than to point to the part of the FOIA that extends the timeframe for responses based upon "unusual circumstances" and to assert during oral argument that the request involved "investigative report and recordings, audio and video." Tr. at 12.

taken without Court intervention. As well, Ms. Lonon herself retreated from her initial representation that the response would be provided in late August or early September 2019. By September 5, 2019, Ms. Lonon was again resorting to the typical representation that a response date could not be provided. Even after suit was filed on September 30, 2019, it took two additional months for Defendant to produce any responsive documents.

Given the unique circumstances of this case, the Court finds the lawsuit was the necessary impetus for disclosure; Plaintiff has substantially prevailed and is eligible for an award of fees and costs under the FOIA. See, e.g., Lovell, 630 F.2d at 432 (citation omitted); Chilivis, 673 F.2d at 1212.

### B. Entitlement

The next step in the inquiry is whether Plaintiff is entitled to fees and costs. See, e.g., Sartori v. U.S. Army, 853 F. App'x 494, 495 (11th Cir. 2021). "Four factors inform this entitlement inquiry: (1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." Schoenberg v. F.B.I., 2 F.4th 1270, 1275 (9th Cir. 2021) (quotation and citation omitted); see also Sartori, 853 F. App'x at 495 (quoting Weisberg, 745 F.2d at 1495); Lovell, 630 F.2d at 431-32 (citation omitted). Again, these factors are not exhaustive. "[T]he court may consider any relevant equitable factors that may

affect its balancing" of the criteria, and a court must evaluate the criteria "in light of the fundamental legislative policies underlying" FOIA. <u>Lovell</u>, 630 F.2d at 431-32; <u>see also</u> <u>Nix v. United States</u>, 572 F.2d 998, 1007 (4th Cir. 1978) ("[A]n award of attorney's fees is not automatic, but is to be made where doing so will encourage fulfillment of the purposes of FOIA."); <u>Long v. U.S.I.R.S.</u>, 932 F.2d 1309, 1313 (9th Cir. 1991) (per curiam) (internal quotation marks and citation omitted) ("[T]he court may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate.").

Here, the first factor—public benefit from disclosure—weighs against Plaintiff given the nature of the underlying incident and the documents at issue.[8]

Regarding the second and third factors—commercial benefit to Plaintiff resulting from disclosure and the nature of Plaintiff's interest in the records— Defendant argues "Plaintiff was clearly interested in using FOIA in connection with" a tort claim under the Federal Tort Claims Act. Response at 15. Defendant avers that Plaintiff filed a SF-95 claim with DEA seeking $5 million for injuries sustained in the accident. <u>Id.</u>; <u>see</u> <u>id.</u> at Ex. B (SF-95). But this claim was not filed until April 17, 2019, about ten months after the FOIA request was

---

[8]     Plaintiff initially appeared to be conceding this point, Motion at 8, but then retreated from the concession, Reply at 5-6.

made and still floundering. Plaintiff contends he had to go through the FOIA process to get even the most basic of answers to questions about what agency or agencies were involved in the incident. Moreover, at least as of the date of the filing of the Reply on this fees issue, May 29, 2020, Plaintiff had not actually initiated suit against Defendant for any underlying tort claim.[9] See Reply at 4.

Plaintiff could have filed an administrative claim with Defendant from the outset (using the "upon information and belief"-type jargon), but he did not. Instead, he chose to serve a very narrow, targeted FOIA request in an attempt to understand what, if any, involvement Defendant had in the matter. This conservative approach serves a greater interest of not involving the Government in an administrative claim process and/or litigation absent answers to preliminary inquiries.

Upon consideration of these second and third factors, they weigh slightly in favor of Plaintiff. He was entitled to know this basic information he sought. The timing of his claims does not suggest to the undersigned that he was using the FOIA improperly or as discovery, but rather to determine whether the agency had involvement in the accident. Obviously, he had an interest in the information, but everyone making a FOIA request presumably has some

---

[9]     Plaintiff did eventually initiate suit on December 14, 2020, and the suit was dismissed with prejudice pursuant to a joint stipulation on June 21, 2021. See Complaint (Doc. No. 1); Joint Status Report and Stipulation for Dismissal (Doc. No. 21); Order dismissing case with prejudice (Doc. No. 22), Case No. 3:20-cv-1405-TJC-PDB.

interest in the information. Plaintiff could not get basic questions answered without the FOIA process, and even through the FOIA process, responses were not forthcoming.

Finally, the fourth factor—the reasonable basis in law for withholding records—weighs in favor of Plaintiff for mostly the same reasons the Court has articulated in determining Plaintiff is eligible for a fee award. Despite Defendant's argument to the contrary, see Response at 16-17, it simply was not reasonable under the circumstances for Defendant to delay as long as it did in responding to a simple request of this nature.

Overall, considering the totality of the circumstances, including the purpose of the FOIA, an award of fees and costs is warranted. See, e.g., Sartori, 853 F. App'x at 495 (quoting Weisberg, 745 F.2d at 1495); Lovell, 630 F.2d at 431-32 (citation omitted); Schoenberg, 2 F.4th at 1275 (quotation and citation omitted).

## IV.   Conclusion

For the foregoing reasons, it is

**ORDERED**:

1.      Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 17) is **GRANTED**.

2.      Plaintiff is awarded his reasonable fees and costs for pursuing the FOIA request.

3.      No later than **June 23, 2023**, the parties shall confer in good faith in an attempt to resolve the amount of fees and costs to be awarded. If an agreement is reached, the parties shall file the appropriate stipulation or other papers to close the case within **forty-five (45) days** of this Order. If no agreement can be reached, Plaintiff shall file within **forty-five (45) days** of this Order a supplemental motion on amount of fees and costs that complies with Rule 7.01(c), Local Rules, Middle District of Florida. A response to any motion is due within the time permitted by the rules.[10]

**DONE AND ORDERED** in Jacksonville, Florida on June 1, 2023.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record

---

[10]      Since a determination of the amount of fees and costs would be dispositive of the case, the undersigned stands ready to enter a report and recommendation on any motion filed if Judge Corrigan requests it.